**Joan SHEEHAN, formerly known as
Joan Wycoff, Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 88–15120.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 26, 1989.

Decided Feb. 16, 1990.

Jerry K. Cimmet, San Francisco, Cal., for plaintiff-appellant.

George C. Stoll and Sandra L. Willis, Asst. U.S. Attys., San Francisco, Cal., for defendant-appellee.

Before BROWNING, PREGERSON and THOMPSON, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Joan Sheehan appeals (1) the grant of summary judgment for the government on Sheehan's claim under the Federal Tort Claims Act ("FTCA") for intentional infliction of emotional distress, on the ground that recovery for this tort is excluded from FTCA by 28 U.S.C. § 2680(h), and (2) the dismissal of her claim under that act for negligent infliction of emotional distress on

the ground that recovery under FTCA for this tort is preempted by the Federal Employees Compensation Act ("FECA"). We reverse.

Sheehan was an Army civilian employee at the Presidio in San Francisco. Clifton Hunt was her supervisor. Sheehan asserts (1) Hunt subjected her to unwanted sexual advances, conditioned employment decisions on submission to such advances, and attempted to fire her when she complained; (2) after she rejected his advances Hunt slandered her, had her assigned to undesirable projects, created a hostile work environment, and prevented her promotion; and (3) her supervisors did not take action against Hunt even after she complained, but instead suggested she transfer to another job and sought to dissuade her from seeking other relief.

Sheehan sued the United States under FTCA. Sheehan's first cause of action alleged Hunt's conduct was intended to and did cause Sheehan humiliation and emotional distress. Sheehan's second cause of action alleged her supervisor's negligent failure to take action and breach of the duty of due care owed Sheehan caused Sheehan humiliation and emotional distress. Sheehan sought $100,000 general damages.

The district court granted summary judgment against Sheehan on the first cause of action and dismissed the second.

## I

### A

■ FTCA waived the sovereign immunity of the United States from suit for injuries caused by government employees, 28 U.S.C. § 1346(b),[1] but with specified exceptions. Under § 2680(h),[2] the United States retains its immunity from suit for certain enumerated intentional torts. The district court granted summary judgment on Sheehan's cause of action for intentional infliction of emotional distress because it felt bound by our holding in *United States v. Hambleton*, 185 F.2d 564, 567 (9th Cir. 1950), that such a claim is beyond the scope of the FTCA because of the express exclusion from the act of "[a]ny claim arising out of assault." § 2680(h).

Sheehan argues *Hambleton* is not controlling because California, the state in which the alleged conduct occurred, recognizes a cause of action for intentional infliction of emotional distress that is independent of a cause of action for assault. Although this would satisfy the provision of FTCA limiting liability to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," § 1346(b), it does not answer the question whether the state cause of action is one excluded from FTCA coverage by § 2680(h). The answer to the latter question turns not upon what rights state law may have created, but rather upon what Congress meant by the phrase "claim arising out of assault" in § 2680(h). *United States v. Neustadt*, 366 U.S. 696, 705–06, 81 S.Ct. 1294, 1299–1300, 6 L.Ed.2d 614 (1961); *Metz v. United States*, 788 F.2d 1528, 1535 n. 8 (11th Cir. 1986).

We are satisfied, however, that a claim for intentional infliction of emotional distress is not excluded from FTCA by § 2680(h), and that the interpretive analysis by which *Hambleton* reached the contrary conclusion has been rejected in subsequent Supreme Court decisions.

---

**1.** § 1346(b) reads in pertinent part:

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

**2.** § 2680(h) reads in pertinent part:

The provisions of this chapter [waiving sovereign immunity] ... shall not apply to—

. . . . .

Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

B

The Supreme Court made it clear in *Rayonier Inc. v. United States*, 352 U.S. 315, 320, 77 S.Ct. 374, 377, 1 L.Ed.2d 354 (1957), decided seven years after *Hambleton*, that "[t]here is no justification for this Court [or any court] to read exemptions into the [Federal Tort Claims] Act beyond those provided by Congress." [3] Following *Rayonier* the Supreme Court established a test for determining whether suit based on particular conduct is barred by one of the exemptions established in § 2680(h).

In essence, the Court has inquired whether the conduct upon which the claim is based falls within the definition of a tort enumerated in § 2680(h) that was "traditional," "commonly understood," or "established" when FTCA was enacted. *See Block v. Neal*, 460 U.S. 289, 296, 103 S.Ct. 1089, 1093, 75 L.Ed.2d 67 (1983); *Neustadt*, 366 U.S. at 705–08, 81 S.Ct. at 1299–1301.

*Neustadt* alleged government employees negligently inspected and appraised the home Neustadt purchased, and Neustadt paid an excessive price in reliance on government reports based on this negligent inspection and appraisal. The Supreme Court held Neustadt's claim barred as one "arising out of . . . misrepresentation" as that tort was commonly understood. *Neustadt*, 366 U.S. at 706–07, 81 S.Ct. at 1301–02.

In *Neal*, the Court developed in some detail the approach initially suggested in *Neustadt*. Neal had obtained a government loan to build a home. Neal's contract with the builder granted the government the right to inspect and test materials and workmanship. After construction was completed plaintiff brought suit under FTCA alleging defects due in part to negligence of government employees in inspecting and supervising construction. The government relied upon *Neustadt* and argued the suit was barred by § 2680(h) as a

"claim arising out of . . . misrepresentation."

The Court distinguished *Neustadt* from *Neal* on the basis of an analysis of the conduct upon which the causes of action alleged in the two cases rested. Neustadt based his claim on an alleged breach of a duty to use due care in obtaining and communicating information upon which Neustadt might reasonably be expected to rely. Because the conduct upon which Neustadt rested his claim was in essence a negligent misrepresentation, the claim was barred by the "misrepresentation" exception. *Neal*, 460 U.S. at 296–97, 103 S.Ct. at 1093. Neal, on the other hand, did not rest her claim "on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Id.* at 297, 103 S.Ct. at 1094. Neal alleged and would be required to prove the government voluntarily undertook to supervise the construction of her home and failed to discharge a duty imposed by the Good Samaritan doctrine to exercise due care in doing so. The government's "duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to respondent." *Id.* Thus the misstatements by government employees were "not essential" to Neal's claim. *Id.*

The Court in *Neal* noted that were it not for § 2680(h), Neal might also have a claim for misrepresentation, and that this claim and Neal's Good Samaritan claim had factual and legal issues in common. But, the court said, "the partial overlap between these two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well. Neither the language nor history of the Act suggests that when one aspect of the Government's conduct is not actionable un-

---

**3.** The court reaffirmed the position taken in *Rayonier* in *United States Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), stating: "The Federal Tort Claims Act provides much-needed relief to those suffering injury from the negligence of government employees. We should not, at the same time that state courts are striving to mitigate the hardships caused by sovereign immunity, narrow the remedies provided by Congress." *Id.* at 165–66, 83 S.Ct. at 1859 (footnotes omitted); *see Block v. Neat,* 460 U.S. 289, 298, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983).

der the 'misrepresentation' exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct." *Id.* at 298, 103 S.Ct. at 1094.

In short the Supreme Court has focused inquiry on the conduct upon which plaintiff's claim is based. Regardless of the plaintiff's characterization of the cause of action, § 2680(h) bars suit for claims based on conduct which constitutes one of the excepted torts, and bars suit for no other claims.

Thus the issue in this case is whether the conduct upon which plaintiff rests her claim for intentional infliction of emotional distress constitutes an assault as that tort is traditionally defined. If it does, then the claim is barred by § 2680(h) because Congress excluded governmental liability for assaults committed by government employees. Such a claim is barred even though the conduct may also constitute a tort other than assault; to hold otherwise would permit evasion of the substance of the exclusion of liability for assaultive conduct. If, however, the aspect of the conduct upon which plaintiff relies did not constitute an assault, suit is not barred even though another aspect of that conduct may have been assaultive.

## C

*Hambleton* did not follow this approach. Hambleton based her claim upon the egre-

gious manner in which she was interrogated by a government investigator and the severe emotional disturbance that resulted. Hambleton alleged no actual or threatened violence or trespass upon her person or property. 185 F.2d at 565. Thus the conduct upon which she relied did not involve a threat of imminent battery—an essential element of assault.[4] No act that might have supported a claim for assault was necessary to Hambleton's claim of intentional infliction of emotional distress, and no such act was alleged.

While the court recognized that the common law definition of assault did not cover the conduct alleged by Hambleton—and also recognized that after 1948, the Restatement definition of intentional infliction of emotional distress did cover that conduct[5]—the court did not, as required by *Neustadt* and *Neal,* look to the *conduct* Hambleton relied upon and compare it with conduct traditionally constituting assault to determine whether her suit was precluded by § 2680(h). Instead the court concluded Congress must have intended to exclude the tort of intentional infliction of emotional distress under § 2680(h) for two principal reasons: (1) Congress must have considered the then emerging tort to be a development within the tort of assault, and (2) "[t]he fact that most other types of intentional torts are listed in the same excepting provision is persuasive that Con-

**4.** *See* Restatement (Second) of Torts § 31 (1965). An action for assault protects the victim's interest in freedom from a very specific and narrow perception—the apprehension of immediate harmful or offensive contact. Assault originated as a criminal trespass. A cause of action for assault was provided to preserve the "king's peace" by punishing conduct likely to inspire retaliation by one who perceives himself threatened by *imminent battery.* Elements of the tort are an act intended to create apprehension that harmful or offensive physical contact is imminent, and the existence of such apprehension in fact. Words alone are not enough, recklessness is not sufficient, a specific apprehension of imminent battery is required—neither apprehension of some other harm, nor fear of future battery will trigger liability for assault. *Id.* at § 21; 1 F. Harper, F. James & O. Gray, The Law of Torts §§ 3.4, 3.5 (2d ed. 1986) ("Harper"); W. Keeton, D. Dobbs, R. Keeton &

D. Owen, Prosser & Keeton on the Law of Torts § 10 (5th ed. 1984) ("Prosser").

**5.** *See* Restatement (Second) of Torts § 46 (1965). In contrast with assault, the purpose of prohibiting intentional infliction of emotional distress is general—to protect the individual's interest in peace of mind; any extreme and outrageous conduct causing severe emotional distress constitutes the tort; no specific intent or kind of conduct by the victim is required; it may be intentional or merely reckless; no specific apprehension by the victim is required—any words or conduct that is outrageous and produces severe emotional distress, intentionally or recklessly, is sufficient. *Id.;* 2 Harper §§ 9.1, 9.2; Prosser § 12; *see generally* Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct,* 82 Colum.L.Rev. 42 (1982).

gress must have intended to include this type of wrong in the same group of excepted torts." *Hambleton,* 185 F.2d at 567.

Because the tort of intentional infliction of emotional distress may be wholly distinct from assault, protecting different interests, imposing different duties, composed of different elements, and arising out of different conduct, the effect of *Hambleton's* first rationale was to add another tort to those specifically excluded from FTCA by § 2680(h). We agree with the Eighth Circuit that the Supreme Court has overruled *Hambleton* to the extent *Hambleton* is inconsistent with the ruling in *Rayonier* that only Congress, not the courts, may expand the scope of § 2680(h) beyond the exact words of the statute. *See Gross v. United States,* 676 F.2d 295, 304 (8th Cir.1982) (expressly noting that "[m]ore recent cases ... implicity reject [*Hambleton's*] analysis," and holding government accountable for intentional infliction of emotional distress). The analysis developed in *Neustadt* and *Neal* must be followed to determine whether in substance the conduct relied upon constituted a specifically excluded tort.

It is also clear § 2680(h) does not include all intentional torts. *See Black v. Sheraton Corp. of America,* 564 F.2d 531, 539 (D.C.Cir.1977); Boger, Gitenstein & Ver-

kuil, *The Federal Torts Claims Act Intentional Torts Amendment: An Interpretative Analysis,* 54 N.C.L. Rev. 497, 518 (1976).[6] The Courts of Appeals for the Second and Eighth Circuits have held specifically that § 2680(h) does not exclude suits under FTCA for intentional infliction of emotional distress. *See Kohn v. United States,* 680 F.2d 922, 926 (2d Cir.1982); *Gross,* 676 F.2d at 304.

If the guidance afforded by *Rayonier, Neustadt* and *Neal* had been available when *Hambleton* was decided, Hambleton's claim for intentional infliction of emotional distress would not have been rejected as a "claim arising out of assault" and hence excluded by § 2680(h). Since *Hambleton* is inconsistent with these subsequent Supreme Court decisions, *Hambleton* is no longer controlling.[7] We hold a claim based on conduct constituting the tort of intentional infliction of emotional distress is not excluded as a matter of law from FTCA by § 2680(h).

**D**

Since the district court felt itself bound by *Hambleton* to hold that Sheehan's cause of action for intentional infliction of emotional distress was barred by § 2680(h) as a matter of law,[8] the district court did

---

6. This conclusion finds support in the legislative history of the Reorganization Plan No. 2 of 1973, P.L. 93–253, amending FTCA to allow suit against the United States for certain intentional torts by federal law enforcement agents. The Senate committee report accompanying the amendment reflects an intention that § 2680(h)'s waiver of sovereign immunity from suit for intentional torts should be expanded rather than limited:

> The Committee realizes that under the Federal Tort Claims Act, Government tort liability for intentional conduct is unclear. For example certain intentional torts such as trespass and invasion of privacy are not always excluded from Federal Tort Claims Act coverage. *Obviously, it is the intent of the Committee that these borderline cases under the present law, such as trespass and invasion of privacy, would be viewed as clearly within the scope of the Federal Torts [sic] Claims Act,* if the amendment is adopted.

S.Rep. No. 588, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 2789, 2791 (emphasis added); *see Black,* 564 F.2d at 540.

7. A panel of this court is not bound by decisions of prior panels clearly inconsistent with subsequent Supreme Court decisions. *See Montana v. Johnson,* 738 F.2d 1074, 1077 (9th Cir.1984); *see also Beltran v. California,* 871 F.2d 777, 781 n. 4 (9th Cir.1988) (noting that in *Fresh Int'l Corp. v. Agricultural Labor Relations Bd.,* 805 F.2d 1353, 1357 & n. 3 (9th Cir.1986), we overruled a previous panel decision in *Martori Bros. Distribs. v. James–Massengale,* 781 F.2d 1349 (9th Cir.), *modified,* 791 F.2d 799 (9th Cir.1986), "in light of subsequent Supreme Court precedent"); *Hamner v. Rios,* 769 F.2d 1404, 1407 (9th Cir.1985) (refusing to follow *Buxton v. Patel,* 595 F.2d 1182 (9th Cir.1979) because the Supreme Court's subsequent opinion in *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) "overrules *Buxton v. Patel* to the extent the latter is inconsistent with the ruling in *Hensley* ").

8. Although the district court's order granted summary judgment rather than dismissing for failure to state a cause of action, the court considered no factual matters. The government relied entirely upon the contention that under

not analyze Sheehan's action in light of *Rayonier, Neustadt* and *Neal.* It is preferable that this task be undertaken by the district court in the first instance.

We note that some of the conduct Sheehan alleged may support claims for assault, libel, slander or other torts expressly barred by § 2680(h). We reverse and remand because we cannot determine if Sheehan's allegations—for example, those relating to retaliation for Sheehan's rejection of Hunt's advances,—will permit proof of conduct that is not within the definition of any of the excluded torts, and that will support Sheehan's claim she suffered injury from the intentional infliction of emotional distress independently of injury suffered from excluded conduct. *See Neal,* 460 U.S. at 296–99, 103 S.Ct. 1093–95; *cf. Thomas-Lazear v. FBI,* 851 F.2d 1202, 1207 (9th Cir. 1988).

## II

■ The district court initially referred Sheehan's negligence-based claim to non-binding arbitration. The arbitrator awarded Sheehan $35,000. The government moved for dismissal, in part on the theory that Sheehan's exclusive remedy was under FECA. The district court concluded there was a substantial question whether FECA extended to non-physical injuries such as negligent infliction of emotional distress. The court stayed the proceedings and referred the question to the Secretary of Labor. The Secretary concluded FECA extended to such claims, but that Sheehan's injury was not causally related to her employment. On the basis of this determination, the district court dismissed Sheehan's

*Hambleton* any action for intentional infliction of emotional distress was barred as an "assault" as a matter of law, and the district court ruled for the government solely on this ground.

9. If a claim is cognizable under FECA:
    The liability of the United States ... with respect to the injury ... of an employee is exclusive and instead of all other liability of the United States ... to the employee ... because of the injury ... in a direct judicial proceeding, in a civil action, or ... under a Federal tort liability statute.
    5 U.S.C. § 8116(c).

cause of action for negligent infliction of emotional distress.

Sheehan recognizes that FECA is the exclusive remedy for United States employees suffering injuries within FECA's coverage and preempts any claim for such injuries under FTCA. 5 U.S.C. § 8116;[9] *see Johansen v. United States,* 343 U.S. 427, 441, 72 S.Ct. 849, 857, 96 L.Ed. 1051 (1952).

Sheehan argues, however, that the Secretary of Labor erred in determining that injuries she suffered from the government's negligent infliction of emotional distress were cognizable under FECA.

The government asserts we are without power to review the Secretary's decision. The government fails to distinguish between a final decision by the Secretary "allowing or denying a payment," which is not subject to judicial review,[10] and a decision by the district court referring a claim to the Secretary, thus divesting the federal courts of subject matter jurisdiction, which we may review de novo. *See Staacke v. Secretary of Labor,* 841 F.2d 278, 280 n. 1 (9th Cir.1988).

The district court referred Sheehan's cause of action for negligent infliction of emotional distress to the Secretary of Labor on the basis of the comment in *Reep v. United States,* 557 F.2d 204, 208 (9th Cir. 1977), that "[i]f there is a substantial question as to FECA coverage, the district court will generally stay the FTCA action pending a determination by the Secretary of Labor." A "substantial question as to FECA coverage" means a question involving "the merits of [the] underlying compensation claim," *Rodrigues v. Donovan,* 769 F.2d 1344, 1347 (9th Cir.1985),[11] for exam-

10. When a claim is cognizable under FECA:
    The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

    .   .   .   .   .

    (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.
    5 U.S.C. § 8128(b); *see Staacke v. Secretary of Labor,* 841 F.2d 278, 281 (9th Cir.1988).

11. "The structure of FECA and the language of section 8128(b) convince us that Congress's intent was that the courts not be burdened by a

ple, "whether the injury had occurred while the employee was on the job." *Griffin v. United States*, 703 F.2d 321, 322 (8th Cir. 1983). Such an issue involves a question of "coverage in and of itself," and must be presented to the Secretary for initial determination. *Id.* Conversely, whether "FECA does not compensate an employee with [a] particular injury is a question of scope of coverage, not coverage in and of itself. Thus, *Reep* does not apply." *Id.* (citations omitted). Following this reasoning, we recently decided whether FECA provided the exclusive remedy for a particular injury, *see Guidry v. Durkin*, 834 F.2d 1465, 1471–72 (9th Cir.1987), noting that if the injury did fall within FECA's scope, then the claim "must first be brought before the Department of Labor." *Id.* at 1472 n. 8.

In sum, the district court lacked jurisdiction to hear Sheehan's claim only if that claim was cognizable under FECA. We hold it was not.

FECA compensates government employees only for physical harm. *Id.* at 1471–72. Sheehan's alleged injury—emotional distress—is divorced from any claim of physical harm. In *Guidry*, we cited with approval *Newman v. Legal Servs. Corp.*, 628 F.Supp. 535, 543 (D.D.C.1986), as standing for the proposition that "because [a] claim for emotional distress [is] not covered by FECA, FECA [is] not [the] employee's exclusive remedy." *Guidry*, 834 F.2d at 1472; *see also DeFord v. Secretary of Labor*, 700 F.2d 281, 290 (6th Cir.1983) (FECA does not cover injury from intentional discrimination).

Moreover, we have jurisdiction to review the Secretary's decision even if determining the scope of FECA coverage does not present a question of subject matter jurisdiction. When the Secretary held Sheehan's claim for emotional distress was covered by FECA, this interpretation of the statute had been foreclosed by *Guidry*. The Secretary's decision was therefore precluded by FECA. We have appellate jurisdiction where the Secretary "is charged

with violating a clear statutory mandate or prohibition." *Staacke*, 841 F.2d at 281.

REVERSED and REMANDED.

flood of small claims challenging the merits of compensation decisions...." *Id.* at 1347–48.