**RICH PRODUCTS CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**Civ. No. S–91–1401 DFL GGH.**

United States District Court,
E.D. California.

July 31, 1992.

Martin H. Orlick, Tobin and Tobin, Walnut Creek, Cal., for plaintiff.

Joyce A. Vermeersch, Asst. U.S. Atty., Sacramento, Cal., and Bertha R. Mitrani, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION AND ORDER

LEVI, District Judge.

Plaintiff Rich Products Corporation ("Rich Products") sues the United States for negligence, claiming that the United States Department of Agriculture ("USDA") either failed to inspect or improperly inspected Rich Products' frozen fruit. The government moves to dismiss for lack of subject-matter jurisdiction on the basis that Rich Products' claim is barred by the misrepresentation exception to the Federal Tort Claims Act ("FTCA"). The court grants defendant's motion to dismiss.

## FACTS

Rich Products processes and freezes fresh fruit.[1] In July 1984, Rich Products contracted with a defense contractor to provide frozen fruit. The frozen fruit was sold to the defense contractor for the military's "Meals Ready to Eat" field ration program. Rich Products separately contracted with the USDA to inspect the fruit to certify that it met contract and military specifications. Following the USDA's cer-

---

1. The facts are taken from the allegations in the complaint.

tification, Rich Products shipped the fruit to the purchaser. After the purchaser received the fruit, a question arose as to whether the USDA's certification was accurate. Thereafter, on April 16, 1985, the USDA issued superseding certificates reversing its finding that the product met the contract specifications. As a result of these superseding certificates, Rich Products was sued by the purchaser for breach of contract. In this action, Rich Products claims that it was injured by the USDA's failure to inspect or improper inspection of the fruit.

The complaint alleges negligence by the USDA. While the complaint does not expressly state a misrepresentation claim, it uses language suggesting such a claim. The USDA moves to dismiss the entire complaint on the ground that Rich Products' claim is barred by the misrepresentation exception to the FTCA.

## ANALYSIS

■■■ The Federal Tort Claims Act[2] is a limited waiver of sovereign immunity and is strictly construed. The Act does not permit suit against the government for claims of misrepresentation, whether negligent or willful. 28 U.S.C. § 2680(h); *United States v. Neustadt*, 366 U.S. 696, 702, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1961). Therefore, to the extent that Rich Products' complaint alleges a misrepresentation claim, it must be dismissed. The district court must look beyond the characterizations in the pleadings to distinguish misrepresentation from negligence claims, a task which is frequently far from simple. *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir.1990).

The Supreme Court twice has provided guidance in distinguishing misrepresentation from negligence claims. In *Neustadt*, plaintiffs relied on an inaccurate written appraisal prepared by the Federal Housing Administration ("FHA") when purchasing a house and brought a claim against the FHA based on this reliance. The Court held that the misrepresentation exception barred plaintiffs' claims against the FHA.

*Neustadt*, 366 U.S. at 710–711, 81 S.Ct. at 1302–1303. The Court defined negligent misrepresentation as breach of "the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs." *Id.* at 706, 81 S.Ct. at 1300.

Subsequently, the Supreme Court distinguished the duty to obtain and communicate accurate information—which falls within the misrepresentation exception—from the duty to perform a separate task. In *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), plaintiff received a loan from the Farmers Home Administration ("FmHA") to build her home. The loan agreement provided that the FmHA should approve all plans and could inspect and test all materials and workmanship. *Id.* at 291, 103 S.Ct. at 1090–91. The completed house was defective, and plaintiff sued the FmHA alleging that it failed to properly inspect and supervise construction. The Court held that the FmHA was subject to suit for allegedly breaching a separate duty to supervise the construction, independent of its duty to carefully obtain and communicate information. *Id.* at 297, 103 S.Ct. at 1094. The Court noted that the "essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Id.* at 296, 103 S.Ct. at 1093. The *Block* court distinguished *Neustadt* because the plaintiffs in *Neustadt* had alleged no injury that they would have suffered independent of their reliance on the negligent appraisal. *Id.* ("The gravamen of the action against the Government in *Neustadt* was that the plaintiffs were misled by a 'Statement of FHA Appraisal' prepared by the Government"). By contrast, in *Block* the Court found that plaintiff alleged a breach by FmHA of its duty to supervise the construction of the house. FmHA's misrepresentations were not essential to a claim of negligent supervision, and thus the claim was not barred by the misrepresentation exception. *Id.* at 297, 103 S.Ct. at 1094.

2. 28 U.S.C. §§ 2671 *et seq.*

In a case which preceded *Neustadt,* the Ninth Circuit expressed the sometimes elusive distinction between negligent misrepresentation and other negligence involving some communication of information:

> The key distinction in this area is between the performance of operational tasks and the communication of information. The Government is liable for injuries resulting from negligence in performance of operational tasks even though misrepresentations are collaterally involved. It is not liable, however, for injuries resulting from commercial decisions made in reliance on government misrepresentations.

*Guild v. United States,* 685 F.2d 324, 325 (9th Cir.1982).

The court draws a number of principles from its review of the caselaw. First, in determining whether a complaint is barred by the misrepresentation exception, the court must look beyond the language in which the complaint is couched and consider the "essence" or "gravamen" of the suit. *See Mt. Homes,* 912 F.2d at 355. Second, if the alleged misrepresentation is essential to the claim then the action is barred even though there is some other allied negligence by the government, for example, in gathering the information that proves inaccurate. When government misinformation is at issue, plaintiff must allege injury independent of that caused by the erroneous information. *See id.* at 356. Finally, the misrepresentation exception particularly protects the United States from suit by commercial entities which claim to have lost money because of reliance on false government information. *Id.*

This case involves two main events: the issuance of the first certificates and the issuance of the superseding certificates.[3] One of these certifications necessarily was inaccurate. To state a claim of negligence rather than misrepresentation, Rich Products must eliminate the government's communication of inaccurate information from the essence of its claim.

As to the first certificates, the complaint alleges that Rich Products shipped the fruit "in reasonable reliance" on the first certificates. Complaint, par. 11. Any claim based on Rich Products' reliance upon inaccurate certificates is barred since the "essence" of the action is one of misrepresentation based on the "communication of misinformation on which the recipient relies." *Block,* 460 U.S. at 296, 103 S.Ct. at 1093; *see* Restatement (Second) of Torts § 552 (1977). Under the reasoning in *Neustadt,* any allied negligence in gathering the information communicated in the certificates does not alter the essence of the action as one for misrepresentation. Moreover, the claim is within the heart of the area covered by the misrepresentation exception: a commercial entity claiming loss because of reliance on government representations. Thus, any claim based on the inaccuracy of the first certificates is barred by the misrepresentation exception.

The court rejects Rich Products' effort to circumvent the misrepresentation exception as to the first certificates by alleging a failure by USDA to "promptly correct" the misinformation in these certificates.[4] This argument is but a thinly veiled attempt to restate a misrepresentation claim as one for negligence. The misrepresentation exception precludes liability for damages based on *either* providing false information *or* failing to provide information. *Mount Homes,* 912 F.2d at 356 (citation omitted). Failure promptly to correct information, therefore, is well within the misrepresentation exception. To permit a separate claim for failure to correct misinformation would nullify the misrepresentation exception.

As to the second set of certificates, Rich Products argues that part of its claim sur-

---

**3.** Although Rich Products asserts that there were three sets of certificates, for purposes of this analysis the court divides the certifications into the original issuance and the subsequent superseding issuance even though two superseding certificates were issued. Both sets of superseding certificates had the same effect and are therefore grouped together.

**4.** This argument was first advanced at the hearing on the government's motion.

vives if these certificates were inaccurate since Rich Products did not rely on these certificates. By that time, Rich Products had already shipped the frozen fruit under the contract in reliance on the first set of certificates. Although the recipient of the fruit relied upon the superseding certificates in rejecting the fruit and suing Rich Products, Rich Products argues that reliance by plaintiff on government misrepresentation is an essential element of a misrepresentation claim and that reliance by a third-party recipient is not sufficient to bring the misrepresentation exception into play.

This characterization and application of the reliance requirement is too narrow and violates the principle that the court should look to the essence of the claim. Plaintiff relied upon the USDA to certify that the fruit met the contract specifications. When the USDA withdrew its approval, even if negligently, plaintiff was harmed because of its earlier reliance upon the USDA's first certification. Therefore, whether the first or second set of certificates was inaccurate is irrelevant. The essence of plaintiff's claim is that it relied upon the USDA's assurance that it had inspected the shipment and found it suitable.[5] Plaintiff's effort to divide the government's conduct into as many discrete acts as may be necessary to avoid the exception is rejected.

Moreover, it is unclear that it is plaintiff—as opposed to the recipient of the government misinformation—who must rely such that the exception may be invoked. In *Block* the Court stated that there must be reliance by the "recipient." 460 U.S. at 296, 103 S.Ct. at 1093. *See also Baroni v. United States*, 662 F.2d 287, 289 (5th Cir.1981), *cert. denied*, 460 U.S. 1036, 103 S.Ct. 1426, 75 L.Ed.2d 787 (developer relied on FHA representations on flood height and remote purchaser plaintiffs were barred from recovering under the misrepresentation exception); *contra Jimenez–Nieves v. United States*, 682 F.2d 1, 4 (1st Cir.1982) (court required reliance "by the plaintiff himself"). Here there was reliance by a recipient since the purchaser from Rich Products relied on the superseding certificates in bringing a breach of contract suit. It would make little sense to find that plaintiff's claim is barred if plaintiff relied upon misinformation, but is not barred if, by a fortuity, the reliance were by some third party with whom the plaintiff dealt. Congress' purpose in providing for the misrepresentation exception evidently was to limit the Government's exposure to suit based on the giving of inaccurate information. This purpose would be defeated by such a narrow reading of the reliance requirement.

In short, regardless of which certificates were inaccurate, the essence of this action is one of misrepresentation and is not based on negligent performance of a task separate from the duty to obtain and communicate information. Absent a miscommunication at some point there would be no loss since all damages in this case stem from misinformation. Moreover, the claim arises in a commercial context, involving government inspection, which is the traditional area in which the exception has applied.

### CONCLUSION

The motion to dismiss is granted. Rich Products asserts claims for misrepresentation over which this court lacks subject-

---

5. A consideration of the facts in *Mt. Homes*, demonstrates the thinness of the distinction plaintiff seeks to draw. In *Mt. Homes* the court found that the misrepresentation exception applied when a home builder sued FmHA for inaccurately characterizing its houses as "spec" houses. Later the State of Washington characterized the homes as "custom" houses and levied a tax on this basis. In reliance on FmHA's characterization, the home builder had not included the state tax in its sales contracts. Suppose that under slightly different facts plaintiff in *Mt. Homes* had alleged that FmHA at first had accurately characterized its homes as "spec" houses but that later in the process, after sales contracts had been signed, FmHA changed the characterization to "custom," and that because of this change the State of Washington levied a tax for custom homes. By this ever so slight change in the articulation of the claim, the facts in *Mt. Homes* become on all fours with Rich Product's theory here, yet the analysis in *Mt. Homes* surely would still apply to bar the claim by the home builder.

matter jurisdiction under the Federal Tort Claims Act.

IT IS SO ORDERED.